UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

B & P BAIRD HOLDINGS, INC.,                          Case No. DT 10-10941
                                                      Chapter 7
            Debtor.                                   Hon. Scott W. Dales
_____/

JAMES W. BOYD, Chapter 7 Trustee,                    Adv. Pro. No. 11-80397

            Plaintiff,

v.

KING PAR, LLC, a Michigan limited liability
company, WILLIAM J. BAIRD AND PAMELA
BAIRD, husband and wife,

            Defendants.
_____/

OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge

Defendant William J. Baird ("Mr. Baird") filed a Motion to Set Aside or Amend

Contempt Order in Accordance with Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(a) & (b) (the

"Motion," DN 111). Plaintiff James W. Boyd (the "Plaintiff") opposes the Motion. The court

has reviewed the Motion and the Trustee's response, and has determined that it can resolve the

controversy on the papers submitted, without oral argument. For the following reasons, the court

will deny the Motion.

By way of background, shortly after the Plaintiff commenced this adversary proceeding

to avoid and recover certain transfers he regards as fraudulent, Plaintiff filed a motion for

preliminary injunction (DN 14). The court set the preliminary injunction motion for a prompt

hearing, but on the eve of that hearing, the parties advised the court that Mr. Baird agreed to fund an escrow in a negotiated amount. Mr. Baird and the Plaintiff, both through counsel, drafted and presented the Stipulated Order Regarding Escrow, which the court entered on September 19, 2011 (the "Escrow Order," DN 36). Thereafter, despite his hand in drafting the Escrow Order, Mr. Baird failed to comply with it, which prompted the Plaintiff to bring a motion to hold Mr. Baird in contempt (the "Contempt Motion," DN 40). Mr. Baird countered by opposing the Contempt Motion and filing his own motion to modify the Escrow Order (DN 44).

The court held a hearing to consider the issues and, on the record, clearly rejected the reasons Mr. Baird offered for not complying with the Escrow Order. *See* Transcript of Hearing held Oct. 11, 2011 (DN 111-2) at 9:24-10:2 ("I didn't credit your reasons for not complying [with the Escrow Order] in the first place, but I do credit the fact that there was at least cooperation in coming to a consent judgment [*i.e.*, the Escrow Order] to begin with"). The court announced its intention to afford Mr. Baird a few additional days to comply with the Escrow Order, but because the court doubted Mr. Baird's willingness to honor his obligations under the Escrow Order, the court (again on the record) prescribed a $500.00 daily sanction to coerce compliance with the Escrow Order. The court declined to award Plaintiff any attorney fees at that time, not because Mr. Baird was blameless, but because (considering the compensatory goals of civil contempt) the Plaintiff incurred no additional attorneys fees resulting from Mr. Baird's contempt, given counsel's contingency fee arrangement. At the conclusion of the hearing, the court directed Plaintiff's counsel to prepare an order, which he did, and which the court entered on October 13, 2011 (the "Contempt Order," DN 62).

In the present Motion, Mr. Baird's counsel mischaracterizes the court's leniency in affording Mr. Baird a grace period as evidence that the court did not hold Mr. Baird in contempt,

2

notwithstanding the clear language to the contrary in the Contempt Order and the court's patent rejection of Mr. Baird's excuses for not complying with the Escrow Order he himself had a hand in drafting. *See* Motion at ¶ 8 ("...the Court gave fixed timelines from the bench as to how William J. Baird could avoid being in contempt ..."). If the court had not ultimately concluded that Mr. Baird was in contempt, it would not have resorted to a *per diem* sanction, a traditional remedy employed to redress civil contempt. The court's measured response to Mr. Baird's unexcused disobedience does not negate the premise for the court's imposition of the *per diem* sanction, namely the court's conclusion that Mr. Baird was in contempt of the Escrow Order. In short, the Contempt Order accurately reflected the court's decision.

Because the court deliberately signed the Contempt Order well aware that it included a contempt finding, Mr. Baird's reliance on Fed. R. Civ. P. 60(a) and (b)(1) is misplaced. Similarly, the fact that Mr. Baird may have purged his contempt by eventually funding the escrow as directed in the Contempt Order does not erase the contempt that served as a predicate for entering that order. Therefore, Fed. R. Civ. P. 60(b)(5) provides no basis for revisiting the Contempt Order. Finally, the court rejects Mr. Grandmaison's allegation that Mr. Moothart mischaracterized the record by submitting the proposed order that ripened into the Contempt Order. *See* Motion at ¶ 23 (referring to "mischaracterization of the record by the Contempt Order's presenting party"). Accordingly, Fed. R. Civ. P. 60(b)(6) provides no support for the Motion.

The timing of the present Motion, over two months after the court entered the Contempt Order and just after the court announced its intention to reassign this adversary proceeding to Judge Hughes as part of the court's triennial docket rotation strikes the court as more of the same

3

gamesmanship that has characterized much of Mr. Baird's approach to this litigation, including his response to the Escrow Order.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 111) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Corey D. Grandmaison, Esq., Kenneth W. Kable, Esq., William D. Tomblin, Esq., Norman C. Witte, Esq., David E. Bevins, Esq., and Jonathan R. Moothart, Esq.

END OF ORDER

Date: January 17, 2012

Scott W. Dales
United States Bankruptcy Judge